**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH SIMON,

                        Plaintiff,

      v.                                                                            9:19-CV-132
                                                                     (GLS/DJS)

R. SUSICE and P. McGRATH,

                        Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

JOSEPH SIMON
Plaintiff, *Pro Se*
94-A-1786
Cape Vincent Correctional Facility
Rte. 12E
PO Box 739
Cape Vincent, New York 13618

HON. LETITIA JAMES                     RICHARD C. WHITE, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART
United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights. Dkt. No. 1,

Compl. Following the close of discovery, Defendants now move for summary judgment dismissing the Complaint in its entirety.

## I. PROCEDURAL BACKGROUND

The Complaint alleges a series of interactions between Plaintiff and Defendants which Plaintiff contends were the result of religious discrimination and retaliation. *See generally* Compl.[1] Following initial review of the Complaint under 28 U.S.C. §§ 1915(e) & 1915(A), Senior U.S. District Court Judge Gary L. Sharpe found that the following three claims could proceed: (1) First Amendment religious exercise asserted against Defendants Susice and McGrath; (2) First Amendment retaliation asserted against Defendants Susice and McGrath; and (3) Section 1983 conspiracy to violate Plaintiff's First Amendment rights asserted against Defendants Susice and McGrath. Dkt. No. 7.

In lieu of an Answer, Defendants filed a Motion for Summary Judgment based on Plaintiff's alleged failure to exhaust administrative remedies. Dkt. No. 17. This Court issued a Report-Recommendation and Order that recommended the Motion be granted in part and denied in part. Dkt. No. 23. Specifically, the Court recommended that the Motion be granted "as to all claims arising after Plaintiff's October 19, 2018 grievance." *Id.* at p. 13. That decision further recommended that the Motion be denied as to claims arising prior to that date. *Id.* All parties objected to the recommendations,

---

[1] Citations to the Complaint are made by reference to the page numbers generated by the Court's CM/ECF system.

Dkt. Nos. 24 & 25, but the District Court adopted the Report-Recommendation in its entirety. Dkt. No. 26.

## II. FACTUAL ALLEGATIONS REGARDING OCTOBER 2018

Plaintiff is a Rastafarian and in the practice of his religion he does not trim his beard. Dkt. No. 41-3, Pl.'s Dep., p. 17; Dkt. No. 45, Pl.'s Opp., p. 13.[2] DOCCS imposes grooming restrictions on inmate beards. Dkt. No. 41-9, Susice Decl., Ex. A. In 2010, Plaintiff obtained a permit to exempt him from DOCCS' requirements regarding the length of his beard. Pl.'s Dep. at p. 23; Pl.'s Opp. at p. 28.

In October 2018, Plaintiff was in custody at Bare Hill Correctional Facility. Pl.'s Dep. at p. 16. On October 16, 2018, Defendant Susice, a Sergeant at Bare Hill, was conducting a search of the M-1 dormitory where Plaintiff was housed. Susice Decl. at ¶ 9. During the search, Susice observed Plaintiff to have a beard which appeared to be longer than one inch in length and had braids. *Id.* at ¶ 10. Susice believed that Plaintiff's beard did not comply with DOCCS' grooming regulations set forth in Directive 4914. *Id.* at Ex A, p. 4. When Plaintiff was questioned about his beard, he stated that he had a permit allowing him to wear a beard longer than one inch. Pl.'s Dep. at p. 39. Susice states that he gave Plaintiff roughly five minutes to find the beard permit. Susice Decl. at ¶11 & Ex. C. Plaintiff disputes the actual length of time Susice provided for him to

---

[2] Plaintiff's opposition to the Motion contains several documents, a responsive Rule 7.1 Statement, a declaration, a memorandum of law, and several exhibits. For ease of reference, the opposition will be cited in this opinion in the form "Pl.'s Opp." followed by the page number assigned by the Court's CM/ECF system.

3

find the permit, claiming he was given only thirty seconds. Pl.'s Opp. at pp. 1-2. At the time, Plaintiff admittedly could not find the beard permit. Pl.'s Dep. at p. 41. Susice left the dormitory prior to Plaintiff locating his beard permit. *Id.* On October 18, 2018, Susice issued Plaintiff a misbehavior report charging him with refusing a direct order, providing false information, and violating the beard length rule. Susice Decl., Ex. B. Plaintiff was found guilty of the direct order charge, but not guilty of the other two charges. Pl.'s Opp. at p. 31.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving

4

party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a

5

rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

### A. Plaintiff's Free Exercise Claim Regarding October 2018

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "A prisoner's First Amendment rights, however, are '[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system.'" *Gilliam v. Baez*, 2017 WL 476733, at *4 (S.D.N.Y. Feb. 2, 2017) (quoting *Ford v. McGinnis*, 352 F.3d at 588). "Accordingly, a prisoner's free exercise claims are 'judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Id.* (quoting *Ford v. McGinnis*, 352 F.3d at 588). "To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. Appx. 52, 55 (2d Cir. 2015).[3]

---

[3] "[I]t is unclear whether the 'substantial burden' element of this test remains viable," *Davis v. Williams*, 2017 WL 507213, at *2, n. 1 (D. Conn. Feb. 7, 2017), and the Second Circuit has expressed doubt whether a prisoner must make this threshold showing. *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks omitted); *see also Williams v. Does*, 639 Fed. Appx. 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed

Plaintiff claims that Susice's issuance of the October 18, 2018 misbehavior report regarding his beard violated his First Amendment rights. Compl. at pp. 14-15. Defendants make several arguments in support of summary judgment. Defs.' Mem. of Law at pp. 3-8.

First, Defendants' argument that Plaintiff's claim must be dismissed because "there is no Rastafarian requirement that an individual have braids in their beard," Defs.' Mem. of Law at p. 4, is not a proper basis for summary judgment. This argument is foreclosed by the Second Circuit's decision in *Ford v. McGinnis* where the Court rejected just such a position holding that it had never "held that a burdened practice must be mandated in order to sustain a prisoner's free exercise claim. Nor do we believe that substantial burden can or should be so narrowly defined." 352 F.3d 582, 593 (2d Cir. 2003). Instead, the question is "whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996). On this record, there is no basis to assume anything other than that Plaintiff holds sincere views about the religious nature of his beard. Pl.'s Opp. at pp. 13-14; *see generally* Pl.'s Dep.

Nor does the Court find Defendants' reliance on *Mack v. Griffin*, 2006 WL 2792736 (N.D.N.Y. Sept. 27, 2006) dispositive of this Motion. In *Mack* the allegations involved comments made by the defendant regarding the plaintiff's beard and

---

conduct substantially burdened his sincerely held religious beliefs.") (citing *Holland v. Goord*, 758 F.3d at 220-21).

7

suggestions that it be shaved. *Id.* at *6. This case involves more than just comments made to Plaintiff about shaving his beard as Plaintiff's allegation relates directly to discipline instituted against Plaintiff for maintaining a beard consistent with his religious tenets. Pl.'s Opp. at p. 31. *Mack*, then, is factually distinguishable.

"The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, but instead is subject to valid penological concerns, including those relating to institutional security." *Walker v. Fischer*, 2012 WL 1029614, at *6 (N.D.N.Y. Mar. 26, 2012) (citing, *inter alia*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). It is in this context that Plaintiff's claim against Susice must be considered.

At the relevant time, DOCCS maintained a rule regarding beard length, which courts have routinely found to serve legitimate penological interests. *Al Hajj Ash Sheikh Siraj Abdul Aziz Muhammad v. Correction Officer Douglas*, 2016 WL 3082657, at *6 (S.D.N.Y. May 26, 2016) (citing cases). These "beard-length policies generally appear to have a legitimate penological objective - whether it be to facilitate inmate identification, prevent hygiene problems, or minimize the need for contact between guards and the inmate during searches." *Barnes v. Craft*, 2008 WL 3884369, at *5 (N.D.N.Y. Aug. 18, 2008). On October 16th, Plaintiff appeared to be in violation of that rule and was admittedly unable to present evidence that he was exempt from the rule. Pl.'s Dep. at p. 39; *see also* Pl.'s Opp. at p. 33. The Court cannot conclude that the issuance of this misbehavior report, that was not clearly false when issued, amounts

to conduct that burdened, let alone substantially burdened, Plaintiff's free exercise of his religious beliefs. *See Vann v. Fischer*, 2014 WL 4188077, at *9-11 (S.D.N.Y. Aug. 25, 2014). This is especially true when Plaintiff admits he did not trim his beard in response to the report, Pl.'s Dep. at pp. 21 & 28, and he was ultimately found not guilty of violating DOCCS' grooming policy and thus faced no disciplinary sanction regarding his beard length or appearance.

Moreover, even if one could conclude that the October misbehavior report burdened Plaintiff's free exercise rights, the basis for the grooming requirement serves a legitimate penological interest. Defendant Susice identified security issues related both to the identification of inmates and the smuggling of contraband as justification for the grooming limits. Susice Decl. at ¶ 7. As noted, the DOCCS directive has been previously found to serve these legitimate security concerns in a constitutional manner. *Fox v. Lee*, 2018 WL 1211111, at *14 (N.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, 2018 WL 1185237 (N.D.N.Y. Mar. 6, 2018); *Barnes v. Craft*, 2008 WL 3884369, at *5.

Though not raised by Defendants, the Court will also address the question of qualified immunity. *Dowling v. Barkman*, 2019 WL 7971868, at *3 (N.D.N.Y. Dec. 20, 2019), *report and recommendation adopted sub nom. Dowling v. Schleicher*, 2020 WL 103480 (N.D.N.Y. Jan. 8, 2020) ("In an appropriate case, the Court may raise qualified immunity *sua sponte* in considering a summary judgment motion."); *Doyle v. Coombe*,

9

976 F. Supp. 183, 187 (W.D.N.Y. 1997) (noting court's "inherent power to grant summary judgment *sua sponte*, in part, based upon the defense of qualified immunity.")

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, the facts are not in dispute that despite telling Susice that he had a beard permit, Plaintiff could not produce it. As such, it was not clear to Susice that he had an exemption and so the issuance of a misbehavior report was not clearly a violation of his rights.

10

Plaintiff's argument that Susice could and should have checked facility records for the existence of a beard permit prior to issuing the misbehavior report, Pl.'s Opp. at pp. 20-21, does not defeat Defendant's entitlement to judgment. While Susice presumably could have done so, it is not reasonable to expect corrections officials to search inmate records each time before issuing a misbehavior report. Plaintiff cites to no law or DOCCS rule imposing an obligation to do so and, in fact, the law suggests to the contrary. *Cf. Deanda v. Hicks*, 137 F. Supp. 3d 543, 572 (S.D.N.Y. 2015) (citing cases) (arresting officer "was under no obligation to credit [Plaintiff's] self-serving claims . . . or to verify" another's account of events prior to making arrest).

Moreover, "a religious inmate's right to grow facial hair in the method and manner he sees fit" is not clearly established. *Lovell v. McAuliffe*, 2020 WL 4938165, at *5 (N.D.N.Y. July 14, 2020), *report and recommendation adopted*, 2020 WL 4934697 (N.D.N.Y. Aug. 24, 2020) (citing cases).

For these reasons, the Court recommends that the Motion for Summary Judgment be granted on the ground that no question of fact exists as to the merits of Plaintiff's First Amendment claim and that Defendant Susice is entitled to judgment as a matter of law. Qualified immunity is also an appropriate ground for summary judgment here.

### B. Defendant McGrath

This Court's earlier Report-Recommendation on the issue of exhaustion found that Plaintiff had not exhausted his administrative remedies for incidents after October

11

19, 2018 and recommended that summary judgment be granted as to any claims after that date. Dkt. No. 23 at p. 13. The District Court adopted that recommendation. Dkt. No. 26. The record reflects that Defendant McGrath's only interactions related to events at issue in this litigation occurred in December 2018. Dkt. No. 41-10, McGrath Decl.; Compl. at p. 7; Pl.'s Dep. at p. 45. Defendant McGrath, therefore, seeks summary judgment on the ground that any claims against him were dismissed as unexhausted. Defs.' Mem. of Law at pp. 12-13. Plaintiff does not dispute this. Pl.'s Opp. at p. 26 ("Plaintiff would be required to acknowledge this Defendant['s] argument."). Accordingly, this Court recommends that Defendant McGrath be granted summary judgment.

### C. Plaintiff's Retaliation and Conspiracy Claims

Further development of the record now establishes that Plaintiff alleges he was retaliated against in December 2018 and that the first acts of the alleged conspiracy between McGrath and Susice took place then as well. Since those claims arose after October 19, 2019, the effect of the District Court adopting the Report-Recommendation, therefore, was to render Plaintiff's retaliation and conspiracy claims unexhausted.[4] As

---

[4] Based on their understanding of the facts, Defendants recognized this possibility as part of their objections to the Report-Recommendation noted that in light of this Court's recommendation "Plaintiff's retaliation and conspiracy claims are dismissed." Dkt. No. 24 at p. 2. The Report-Recommendation specifically noted that the record was unclear as to the timing of certain allegations and the extent to which they survived the Court's recommendations. Dkt. No. 23 at p. 9 n.4.
.

a result, the Court recommends that summary judgment be granted as to Plaintiff's conspiracy[5] and retaliation claims.

The retaliation Plaintiff alleges was the December 2018 issuance of another misbehavior report by Susice. Pl.'s Dep. at p. 43.[6] Plaintiff claims that it was issued in retaliation for the results of Plaintiff's October disciplinary hearing and/or the grievance he filed after being issued the October misbehavior report. *Id.* at pp. 42-43; Pl.'s Opp. at p. 21. The allegedly retaliatory act, however, occurred in December 2018 and thus, consistent with the Court's prior ruling was not administratively exhausted. It, therefore, must be dismissed.

Plaintiff's conspiracy claim is likewise unexhausted under the Court's prior decision since it alleges a conspiracy to deprive him of his rights following conversations between McGrath and Susice about Plaintiff's beard in December 2018. *See* Pl.'s Dep. at p. 45 (noting that he was issued another misbehavior report "the next day, as a matter of fact on the 21st of December.").

---

[5] Alternatively, Plaintiff's conspiracy claims are also barred by the intracorporate conspiracy doctrine. "Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007); *see also Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002). Here, both McGrath and Susice are DOCCS employees and there is no evidence to suggest that they were acting outside of the scope of their employment. Therefore, McGrath and Susice were incapable of conspiring together as a matter of law. *See Orafan v. Goord*, 411 F. Supp. 2d 153, 164-65 (N.D.N.Y. 2006), *vacated and remanded on other grounds*, *Orafan v. Rashid*, 249 Fed. Appx. 217 (2d Cir. 2007).

[6] That misbehavior report also related to interactions between Plaintiff and Susice regarding Plaintiff's beard. *See* Dkt. No. 41-5.

## V.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 41) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  June 14, 2021
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge